UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

                                                          Case No. 13-35361

JAMES MATSON &
KEVIN MABRY,

                                                          Chapter 13

          Debtors.

_____

MEMORANDUM DECISION ON DEBTORS' OBJECTION TO SEAWAY BANK & TRUST
COMPANY'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO BIFURCATE CASE

_____

      This matter came before the Court on Seaway Bank & Trust Company's motion to dismiss the debtors' case or, in the alternative, to bifurcate the case. The debtors, James Matson and Kevin Mabry, who filed this joint chapter 13 petition as same-sex spouses on November 26, 2013, were legally married in Iowa and reside in Wisconsin. The debtors opposed the motion to dismiss or bifurcate and, after a preliminary hearing on April 15, 2014, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052. For the reasons stated below, the motion to dismiss or bifurcate is denied.

ARGUMENTS

      While both parties declined the opportunity to file briefs in support of their positions, they did provide a summary of their arguments in their pleadings.

      Seaway argues a joint case may only be commenced "by an individual that may be a debtor under such chapter and such individual's *spouse*." 11 U.S.C. § 302(a) (emphasis added). Traditionally, "the definition and regulation of marriage ... has been treated as being within the

authority and realm of the separate States," *United States v. Windsor*, 133 S. Ct. 2675, 2689-90, 186 L. Ed. 2d 808 (2013). Since Wisconsin does not allow or recognize same-sex marriages, Wis. Const. art. XIII, § 13, the debtors are not "spouses" for purposes of 11 U.S.C. § 302.

The debtors argue that the Supreme Court found the federal Defense of Marriage Act, which defined marriage as a union between one man and one woman, "violate[d] basic due process and equal protection principles applicable to the Federal Government." *Windsor*, 133 S. Ct. at 2693. Thus, the state of Wisconsin does not have the authority to deny a lawfully wedded couple any federal benefits, which would include the right to file as spouses in a joint bankruptcy case.

Neither the United States Trustee nor the Chapter 13 Trustee have joined the motion, presumably because the Department of Justice announced that "same-sex married couples should be treated in the same manner as opposite-sex married couples for all bankruptcy purposes ... including individuals married to a person of the same sex who were legally married in a state that recognizes such marriages, but who are domiciled in a state that does not recognize such marriages." U.S. Dept. of Just., U.S. Trustee Program, Consumer Info., http://www.justice.gov/ust/eo/public_affairs/consumer_info/ (last visited April 23, 2014).

## DISCUSSION

Pursuant to 11 U.S.C. § 302, "[a] joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." 11 U.S.C. § 302(a). In this case, the parties agree the debtors' marriage is lawfully recognized by the State of Iowa, where it was performed. Also, they do not challenge the Wisconsin venue for the bankruptcy of either

2

party. Rather, the creditor challenges the debtors' right to file a joint petition while residing in Wisconsin. Wisconsin's marriage amendment to the state constitution declares that the only "marriage" valid or recognized in Wisconsin is a marriage "between one man and one woman." The amendment further prohibits same-sex couples from entering into a "legal status identical or substantially similar to that of marriage." Wis. Const. art. XIII, § 13.

In *United States v. Windsor*, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013), the taxpayer, as the surviving spouse of a same-sex married couple, was denied the benefit of the spousal estate tax deduction because the definitions of "marriage" and "spouse" under section 3 of the federal Defense of Marriage Act (DOMA) did not meet the requirement for the deduction. The plaintiff and the decedent had been married in Canada and lived in New York, which recognized the marriage as valid in New York. After an extended discussion of jurisdiction and whether a case or controversy existed, the Supreme Court decided to take up the matter of whether the surviving member of the couple, who had been bequeathed the decedent's estate, qualified as a spouse for federal estate tax purposes. The tax issue turned on whether the provision of DOMA defining for all federal law purposes "marriage" as a legal union between a man and a woman only, and "spouse" as a person of opposite sex who was a husband or wife, was invalid. This definition, codified in the federal "Dictionary Act" at 1 U.S.C. § 7, applied not just to the tax issue presented, but the Court recognized it could have implications to well over 1,000 federal statutes and regulations relating to spouses and marriages. 133 S. Ct. at 2694.

The Supreme Court held that this definition created an unconstitutional deprivation of equal protection provided by the Fifth Amendment. *Id*. at 2693. Since laws affecting marriage are solely within the authority of the various states, DOMA had the effect of singling out for

disparate and frequently negative treatment a particular subset of unions deemed appropriate for respect by the states that recognize them. The Court found the provision invalid, because "no legitimate purpose overcomes the purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to protect in personhood and dignity." 133 S. Ct. at 2696.

Nevertheless, section 2 of DOMA remains intact under *Windsor*. Section 2 creates an exception to the Full Faith and Credit Act and provides that no *state* shall be required to give effect to "any public act, record, or judicial proceeding respecting a relationship between persons of the same sex." 28 U.S.C. § 1738C.[1] This section was not at issue in *Windsor* because the controversy involved a matter of federal tax law, and the state the couple lived in recognized their marriage. This contributes to the uncertainty surrounding interstate recognition of same-sex marriages in various contexts, such as the bankruptcy filing by the debtors here.

Unlike the parties in this case, the taxpayer in *Windsor* was married to her same-sex partner in Canada and lived in New York, a state that recognized and protected same-sex marriages. Thus, under the narrow ruling in *Windsor,* those individuals married in a jurisdiction recognizing same-sex marriage and currently living in a state that recognizes same-sex marriage are entitled to have their marriage federally recognized.

Wisconsin does not recognize same-sex marriages, a legal stance currently allowable under section 2 of DOMA. Wisconsin does not have to treat the debtors as married in any way. However, section 2 applies to *states*; it does *not* apply to federal courts and certainly does

---

[1] On the same date as the *Windsor* decision, the Supreme Court declined to address, on the grounds of improper standing, the constitutionality of section 2 of DOMA regarding state law restrictions on same-sex couples. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013). *See also* Jackie Gardina, *Bankruptcy and the Unresolved DOMA Questions*, 22 J. Bankr. L. & Prac. 2 Art. 1 (2013).

4

apply to this Court. At first glance, one might think the creditor's motion would invoke an analysis of equal protection, as *Windsor* did, or substantive due process issues (as the majority's decision was characterized and strongly criticized in Justice Scalia's dissent), or even the Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State."). Instead, the issue – the right of these same-sex spouses, married in a state that allows them to do so, to file a joint bankruptcy case in a state that does not recognize their union as a marriage – is more appropriately a matter of choice of law principles.

The Bankruptcy Code is silent as to which state law to apply when determining the validity of a party's marriage. It is well settled that the validity of a marriage, at least in regard to its formalities, is governed by the law of the place where it is celebrated, rather than by the law of the spouses' domicile; and the prevailing view in this country is that the law of the place of celebration governs also as regards the capacity of the parties to marry. *Effect in Third State of Marriage Valid Where Celebrated But Void by Law of Domicil of Parties*, 51 A.L.R. 1412 (1927). The federal government has historically, as well as very recently, relied on the "place of celebration" rule to determine who is married. *See, e.g.*, H.R. Rep. No. 104-664, at 8 (1996) (noting "[t]he general rule for determining the validity of a marriage is *lex celebrationis* – that is, a marriage is valid if it is valid according to the law of the place where it was celebrated"); I.R.S. Rev. Rul. 2013-17, 2013-38 I.R.B. 201 ("the Service has determined to interpret the Code as incorporating a general rule, for Federal tax purposes, that recognizes the validity of a same-sex marriage that was valid in the state where it was entered into, regardless of the married couple's place of domicile"); U.S. Citizenship & Immigr. Servs.,

http://www.uscis.gov/family/same-sex-marriages (last visited April 23, 2014) ("As a general matter, the law of the place where the marriage was celebrated determines whether the marriage is legally valid for immigration purposes. Just as USCIS applies all relevant laws to determine the validity of an opposite-sex marriage, we will apply all relevant laws to determine the validity of a same-sex marriage. The domicile state's laws and policies on same-sex marriages will not bear on whether USCIS will recognize a marriage as valid.").

Reliance on the "place of celebration" rule ensures that married couples do not lose their marital status simply because they travel or relocate across state borders. This recognition continues even in states where the marriage could not have been originally performed. Restatement (First) of Conflicts of Law § 121 (1934) (marriage deemed "valid everywhere" if the "requirements of the marriage law of the state where the contract of marriage" occurred were satisfied). Accordingly, this Court will follow the "place of celebration" rule, requiring the recognition of an out-of-state same-sex marriage as valid, when interpreting the Bankruptcy Code. There is no reason to part from this well settled principle.

Furthermore, while the state may not be required to recognize the debtors' marriage, inasmuch as such marriage conflicts with Wisconsin's opposition to same-sex marriage, this Court is required under the Full Faith and Credit Act, codified at 28 U.S.C. § 1738, to recognize and apply Iowa's same-sex marriage law for purposes of federal law. Because the debtors' marriage was lawful where originally performed, and *Windsor* invalidated DOMA's requirement that legal construction of the word "spouse" refer only to opposite-sex couples, they are deemed "spouses" for purposes of the Bankruptcy Code. Consequently, the Code's requirement that a joint case may only be filed by an individual and the individual's spouse, 11 U.S.C. § 302(a), is

6

Case 13-35361-gmh    Doc 28    Filed 04/29/14    Page 6 of 7

satisfied in this case. The creditor's motion to dismiss or, in the alternative, to bifurcate the case is denied. A separate order consistent with this decision will be entered.

April 29, 2014

Margaret Dee McGarity
United States Bankruptcy Judge